# In the United States Court of Federal Claims

|  |  |
|---|---|
| VECTRUS SYSTEMS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 20-2053C (BID PROTEST) |
| | ) (Filed Under Seal: January 11, 2021 \| |
| THE UNITED STATES OF AMERICA, | ) Reissued: January 21, 2021)* |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| KELLOGG, BROWN & ROOT | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

*Kevin P. Mullen*, Morrison & Foerster LLP, Washington, DC, for Plaintiff. *Sandeep N. Nandivada*, Morrison & Foerster LLP, Washington, DC, *Caitlin. A. Crujido*, Morrison & Foerster LLP, Washington, DC, *Lyle F. Hedgecock*, Morrison & Foerster LLP, Washington, DC, and *Victoria D. Angle*, Morrison & Foerster LLP, Washington, DC, Of Counsel.

*Anna Bondurant Eley*, Commercial Litigation Branch, Civil Division, U. S. Department of Justice, Washington, DC, for Defendant.

*Seth H. Locke*, Perkins Coie LLP, Washington DC, for Defendant-Intervenor.

## OPINION AND ORDER

**KAPLAN, Judge.**

The plaintiff in this post-award bid protest, Vectrus Systems Corporation ("Vectrus"), is currently providing day-to-day base maintenance services at Air Force installations in Turkey and Spain under a contract that expires on February 27, 2021. Compl. ¶ 7, ECF No. 1; Pl.'s Mem. in Supp. of its Mot. for a TRO and Prelim. Inj. ("Pl.'s Mot.") at 2, 6, ECF No. 5. On August 26, 2020, the Air Force informed Vectrus that it had awarded the successor USAFE-AFAFRICA Base Operations Support ("UABOS") Contract to defendant-intervenor Kellogg,

---

* This opinion was originally issued under seal and the parties were given the opportunity to request redactions. Neither party submitted redactions, and the opinion is being issued in full.

Brown & Root Services, Inc. ("KBR"). Pl.'s Mot. at 5. The Air Force plans to exercise its option to extend Vectrus' contract for a period of two months, to April 27, 2021, after which KBR will begin performance on its newly-awarded contract. Id. at 6.

The Air Force intends to initiate the ninety-day period of transition of contract performance to KBR on January 27, 2021. Id. Currently before the Court is a motion for a temporary restraining order and preliminary injunction that Vectrus has filed to prevent the Air Force from doing so. Pl.'s Mot.

The Court heard argument on Vectrus' motion on Monday, January 4, 2021 during a telephonic status conference. At the conclusion of the argument, the Court orally denied Vectrus' motion. In this Opinion, the Court provides a more detailed explanation of its decision.

## DISCUSSION

A temporary restraining order or a preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948, 129–30 (2d ed. 1995)). To warrant temporary or preliminary relief, the moving party must demonstrate that: (1) it is likely to succeed on the merits; (2) it will be irreparably harmed without interim injunctive relief; (3) the balance of hardships tips in its favor; and (4) the public interest favors the grant of injunctive relief. Am. Signature, Inc. v. United States, 598 F.3d 816, 823 (Fed. Cir. 2010) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). If preliminary relief is granted, "the weakness of the showing regarding one factor may be overborne by the strength of the others." FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). On the other hand, "[i]f the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial." Id. (citing Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc., 908 F.2d 951, 952 (Fed. Cir. 1990)).

In this case, the balance of equities tips against an award of temporary or preliminary relief. First, the Court is not persuaded that Vectrus has demonstrated a substantial likelihood of success on the merits. The central issue raised in Vectrus' protest is whether the Air Force's comparison of its past performance to that of KBR was reasonable. Pl.'s Mot. at 8. Vectrus alleges that the agency "ignored the documented deficiencies in KBR's past performance" while overemphasizing Vectrus' own negative performance history, id. at 11, and that Vectrus deserved a better rating, id. at 17. It also contends that the Air Force's evaluation of KBR's price was unreasonable "because it failed to rationally assess the price reasonableness of KBR's [Total Evaluated Price]." Id. at 22.

The Court notes that the record before it on the merits consists only of the Index to the Agency Report that was filed when this matter was before the Government Accountability Office on Vectrus' unsuccessful protest. See Pl.'s Mot. Ex. A, ECF No. 5-1. The Agency Report itself is not before the Court and Vectrus has not submitted copies of the documents from the Agency Report to which it cites in the memorandum in support of its motion.

Further, the Court's scope of review of determinations regarding the relative strengths of offerors' past performance proposals, and/or the reasonableness of an agency's price analysis is a narrow one. The Court reviews challenges to procurement decisions under the standard used to evaluate agency actions under the Administrative Procedure Act, 5 U.S.C. § 706. See 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Thus, to successfully challenge an agency's procurement decision, a plaintiff must show that the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see also Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). "The arbitrary and capricious standard," which is the one applicable here, "is highly deferential," and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974)); see also Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001) (noting that court's function in a bid protest is limited to "determin[ing] whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion'") (quoting Latecoere Int'l, Inc. v. U.S. Dep't of Navy, 19 F.3d 1342, 1356 (11th Cir. 1994)). Accordingly, the protester "bears a heavy burden" in attempting to show that a procuring agency lacked a rational basis for its decision. Impresa, 238 F.3d at 1338.

Further, Vectrus has not established that it will suffer irreparable harm that could be avoided if the Court were to issue the injunctive relief it requests while this protest is pending. "A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great. A presently existing, actual threat must be shown." Qingdao Taifa Grp. Co. v. United States, 581 F.3d 1375, 1379 (Fed. Cir. 2009) (quoting Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983)); see also Takeda Pharm. U.S.A., Inc. v. Mylan Pharm. Inc., 967 F.3d 1339, 1349 (Fed. Cir. 2020) (observing that a "bare assertion of irreparable harm is never sufficient to prove such harm or justify the 'extraordinary remedy' of a preliminary injunction") (quoting Winter, 555 U.S. at 24).

Vectrus' allegations of harm are set forth in the declaration of Karl Sagstetter, its Vice President for Base Operations Support. See Pl.'s Mot. Ex. B, ECF No. 5-2. He asserts that the transition process set to begin at the end of January may be "inherently disruptive to incumbent contract performance." Id. ¶ 6. This is because under the "Transfer of Undertakings (Protection of Employment) . . . regulations in Turkey and Spain," the transition will "require negotiations with the handful of local trade labor unions involved in base operations in Turkey and Spain regarding salaries, benefits, work hours, vacation, leave, safety, and other work and management terms." Id. ¶ 5. "For example," Mr. Sagstetter posits, "if KBR, as the new contractor, offers less generous benefits than the local employees now receive from Vectrus, labor strife and lawsuits, dragging both KBR and Vectrus into the local courts, are quite likely." Id. ¶ 6. This disruption might, in turn, impede Vectrus' ability to perform the incumbent contract, resulting in the type of negative performance reviews which could potentially "damage . . . Vectrus's prospects for winning" future contracts—were it to prevail in this case. Id. ¶ 7. He additionally contends that "[i]nstituting transition also would irreparably damage Vectrus's ability to compete for the UABOS contract, in the event the Court determines its bid protest is meritorious" because the

transfer of local nationals would have to be reversed and because, if KBR had offered these employees better salaries and benefits, then they might decline to remain with Vectrus, thus disadvantaging it in any re-competition. Id.

The Court finds these allegations of future injury too speculative to demonstrate irreparable harm. Vectrus' concerns that its contract performance could be impaired by circumstances arising out of the anticipated transfer of its current employees to KBR depend on a chain of events, none of which have been shown likely to occur or to follow one from another. First, KBR would have to offer current Vectrus employees less generous benefits than are offered by Vectrus. That offer would then have to result in some undefined "labor strife" and then to "lawsuits." Id. ¶ 6. The undefined "labor strife" as well as the lawsuits would then, and again in some undefined manner, "interfere[] with" Vectrus' contract performance between January 27 and the end of April. Id. Or, on the other hand, Vectrus posits, KBR could offer the employees more (as opposed to less) generous benefits than Vectrus. Id. ¶ 7. Those employees then "might" not agree to return to Vectrus, thereby making it more difficult for Vectrus to compete for the contract should it be successful in its protest. Id.

These harms have not been shown to be likely, much less imminent. They are too attenuated to outweigh the harm which might be inflicted on the government and the public interest if the Air Force were not able to begin the transition to a new contract that it has concluded would provide it with superior service. Moreover, any harm to Vectrus is ameliorated by the fact that the Court has established an expedited briefing schedule that will allow this case to be resolved by the end of March, if not sooner, well before full performance begins at the end of April. Therefore, Vectrus has not persuaded the Court that the balance of equities favors granting it the extraordinary relief it seeks.

## CONCLUSION

On the basis of the foregoing, Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction is **DENIED**. ECF No. 4.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge